1  Shella Alcabes, Cal. Bar No. 267551
   salcabes@freedomfoundation.com
2  Rebekah Schultheiss, Cal. Bar No. 256714
   rschultheiss@freedomfoundation.com
3  Timothy R. Snowball, Cal. Bar No. 317379
   tsnowball@freedomfoundation.com
4  Freedom Foundation
   P.O. Box 552
5  Olympia, WA 98507
   Telephone: (360) 956-3482

6  *Attorneys for Plaintiffs*

7              **UNITED STATES DISTRICT COURT**
         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
8                  **WESTERN DIVISION**

9   KIMBERLY KRIEGER, CARLI        Case No.:
    GOLBIN, ANNA KINGSTON, and
10  JANE DOE, on behalf of themselves,
    and all others similarly situated,   **CLASS ACTION COMPLAINT**
11                                        **FOR DECLARATORY**
                                          **JUDGMENT, INJUNCTIVE**
12       Plaintiffs,                      **RELIEF, AND NOMINAL**
         v.                               **DAMAGES FOR VIOLATION OF**
13                                        **CIVIL RIGHTS [42 U.S.C. § 1983]**
    ERIC BANKS, in his official capacity
14  as Chair of the California Public     **DEMAND FOR JURY**
    Employee Relations Board; ARTHUR
15  A. KRANTZ, in his official capacity as
    Member of the California Employee
16  Relations Board; LOU PAULSON, in
    his official capacity as Member of the
17  California Public Employee Relations
    Board; ADRIN NAZARIAN, in his
18  official capacity as Member of the
    California Public Employee Relations
19  Board; ALBERTO CARVALHO, in
    his official capacity as Superintendent
20  of Los Angeles Unified School
    District,
21
         Defendants.
22

23
    CLASS ACTION COMPLAINT              i
24



**INTRODUCTION**

Plaintiffs Kimberly Krieger, Carli Goblin, Anna Kingston, and Jane Doe (Plaintiffs) are all teachers employed by the Los Angeles Unified School District (LAUSD) compelled by *state law* to associate with a political organization, United Teachers of Los Angeles (UTLA), that publicly advocates acts violating their deeply held religious beliefs. UTLA supports calls for the destruction of Plaintiffs' religious homeland, and promotes animosity and violence towards people of Jewish descent.

Since the Hamas terrorist attack on Israel on October 7, 2023, UTLA's vitriol has only intensified. As ethnic and religious Jews, the Plaintiffs share the conviction that the return of the Jewish people to their ancestral homeland and the reconstitution and defense of a sovereign Jewish state is a covenant with God. Yet Plaintiffs are compelled to associate with ULTA in order to keep their employment with LAUSD, causing them stress and ostracization from colleagues, on one hand, and their faith and social communities on the other.

While the Plaintiffs have chosen not to be members of UTLA, they are still forced to associate with UTLA pursuant to the California Educational Employment Relations Act (EERA), California Government Code §§ 3540, *et. seq.* Under the EERA, Plaintiffs are within a bargaining unit of public employees, exclusively represented for collective bargaining by UTLA. UTLA has exclusive legal authority to speak for all employees in the unit, irrespective of whether each individual employee agrees to or desires such exclusive representation. UTLA represents Plaintiffs in the unit's collective bargaining agreement (CBA) negotiated and

CLASS ACTION COMPLAINT                    1

approved by Defendant Alberto Carvalho, superintendent of LAUSD. UTLA inserted requirements into the CBA for the adoption of model curricula for the classroom that is openly anti-Semitic, and has provided teacher training opportunities where teachers are taught how to avoid detection for anti-Israel rhetoric. UTLA also supports anti-Semitic and anti-Israel professional development classes – classes that can advance teachers' careers.

Both the EERA and the CBA compel Plaintiffs to associate with UTLA's anti-Semitic speech and curriculum despite Plaintiffs objections based on their sincerely held beliefs. This compelled association also subjects Plaintiffs to open hostility and disapproval in their communities. Plaintiffs seek freedom from all association with UTLA as is their right under the First Amendment to the United States Constitution.

Therefore, the Plaintiffs bring this civil rights action on behalf of themselves and all similarly situated persons pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief, and nominal damages, to redress and prevent the ongoing deprivation of rights, privileges, and immunities under the First and Fourteenth Amendments to the United States Constitution.

## JURISDICTION AND VENUE

1.    This action arises under the Constitution of the United States and the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983, to redress the deprivation, under color of state law, of Plaintiffs' rights, privileges, and immunities under the Constitution of the United States, specifically the First and Fourteenth Amendments.

CLASS ACTION COMPLAINT                2

2.     The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331, because their claims arise under the Constitution of the United States, and 28 U.S.C. § 1343, because Plaintiffs seek relief under 42 U.S.C. § 1983.

3.     This action is an actual controversy in which Plaintiffs seek a declaration of their rights under the United States Constitution.

4.     Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court may declare Plaintiffs' rights and grant further necessary and proper relief, including injunctive relief, pursuant to Federal Rule of Civil Procedure 65.

5.     Defendants are "persons" within the meaning of 42 U.S.C. § 1983, and subject to remedies pursuant to that statute. *Ex parte Young*, 209 U.S. 123 (1908).

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because LAUSD is domiciled in, operates, and does business in this judicial district.

7.     Additionally, the Plaintiffs' injuries and a substantial part of the events giving rise to this action occurred in this judicial district.

## PARTIES

8.     Plaintiffs are each employed by LAUSD and are each within the bargaining unit outlined in Article 1, Section 1.0 of the CBA entered into by Defendant Carvalho and UTLA for 2022-2025. A true and correct copy of the CBA is attached hereto as **Exhibit A.**

CLASS ACTION COMPLAINT                    3

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

9.     Plaintiff **Kimberly Krieger** is a "public school employee" within the meaning of the EERA. Ms. Krieger has been teaching for fifteen years in both middle and high school within LAUSD.

10.     Ms. Krieger is an Orthodox Jew with a devout commitment to her religious and ethnic heritage. An integral part of her sincerely held religious practice is the support of the State of Israel and the cause of Zionism in creating a Jewish homeland.

11.     Plaintiff **Carli Golbin** is a "public school employee" within the meaning of the EERA. Ms. Golbin has been teaching for seven years, and has been in LAUSD schools for three years. She currently teaches sixth grade English, history and theater at an LAUSD school.

12.     Ms. Golbin is a Traditional Jew, and both her religious tradition and her family give her strong ties to the State of Israel where members of her family reside.

13.     Plaintiff **Anna Kingston** is a "public school employee" within the meaning of the EERA. Ms. Kingston has been an occupational therapist for twenty-eight years, and has been in Los Angeles schools since 2001. She currently works as an occupational therapist for LAUSD.

14.     Ms. Kingston is Jewish, and has lived in Israel, and also has family still living there. Zionism, or a commitment to a Jewish homeland, is an integral component of Ms. Kingston's Jewish identity and her faith tradition.

CLASS ACTION COMPLAINT                    4

15.    Plaintiff **Jane Doe** is a "public school employee" within the meaning of the EERA. Jane Doe has been teaching at LAUSD for twenty-five years, and currently teaches the third grade at an inner-city school.

16.    Jane Doe is an Orthodox Jew with a sincere devotion to the State of Israel. Her sincere beliefs are based on her religious convictions, her ethnic heritage, and the fact that she has family residing in Israel. Zionism, or a commitment to a Jewish homeland, is an integral component of Jane Doe's Jewish identity and her faith tradition.

17.    Jane Doe joins this suit anonymously because she fears retaliation at her workplace for her stance against UTLA and in support of Israel.

18.    Members of **PERB** are the appointed pursuant to California Government Code § 3541 and § 3543.

19.    Defendant **Eric Banks** is sued in his official capacity as Chair of PERB. In this role, he is directly responsible for enforcing the provisions of the EERA.

20.    Defendant **Arthur A. Krantz** is sued in his official capacity as Member of PERB. In this role, he is directly responsible for enforcing the provisions of the EERA.

21.    Defendant **Lou Paulson** is sued in his official capacity as Member of PERB. In this role, he is directly responsible for enforcing the provisions of the EERA.

CLASS ACTION COMPLAINT                    5



22.    Defendant **Adrin Nazarian** is sued in his official capacity as Member of PERB. In this role, he is directly responsible for enforcing the provisions of the EERA.

23.    Defendant **Alberto Carvalho** (Carvalho) is the superintendent of LAUSD, and is sued in his official capacity. Carvalho oversees and manages the collective bargaining process between the LAUSD bargaining unit and UTLA, and approved the resulting CBA.

## FACTUAL ALLEGATIONS

**A. PERB Compels the Plaintiffs to Associate with a Political Organization**

24.    Under the EERA, PERB certifies bargaining units of public employees, and certifies a union to be each unit's exclusive representative for collective bargaining.

25.    A union so certified has exclusive legal authority to speak for all employees in each designated bargaining unit, irrespective of whether each individual employee agrees to or desires such exclusive representation.

26.    When a union has been certified or recognized as the exclusive representative, the public employer is required by law to negotiate only with that union regarding the terms and conditions of employment for the public employees in the bargaining unit the union exclusively represents.

27.    In 1977, PERB certified UTLA as exclusive representative for the bargaining unit described in Article 1 of the CBA. A true and correct copy of the certification order is attached hereto as **Exhibit B**. *See also*, Ex. A, Article 4-A.

CLASS ACTION COMPLAINT                6

28.     PERB will prohibit any attempt by Plaintiffs to renegotiate their wages, hours or working conditions directly with LAUSD.

29.     Pursuant to state law, the certification order, and the CBA, the LAUSD instructional staff, including Plaintiffs, are forced to be included in the instructional staff bargaining unit and be exclusively represented by UTLA.

30.     The EERA provides that a public school employee may decide whether or not to join an employee organization (union), but if the employee joins the union, the employee must "maintain his or her membership in good standing for the duration of the written agreement." Cal. Gov't Code § 3540.1.

31.     Pursuant to the CBA, LAUSD "shall deduct UTLA dues from the salary of each employee who has submitted a written authorization. Such an authorization shall continue in effect unless revoked in writing by the employee." Ex. A, art. 4-A, clause 1.0.

32.     Article 4-A of the CBA grants certain rights to UTLA, including "payroll deductions," directly from public employees' wages, Ex. A, art. 4-A, clause 2.0, and "agency fee[s]", Ex. A, art. 4-A, clause 4.0, 4.1.

33.     As exclusive representative for the instructional staff bargaining unit, UTLA represents 30,000 LAUSD employees, per its website.

34.     Plaintiffs have not participated in any effort or vote to certify or recognize UTLA as exclusive representative.

35.     Despite Plaintiffs' resignations from membership in UTLA, they remain public school employees within the meaning of the EERA, and thus subject

CLASS ACTION COMPLAINT                    7

to exclusive representation by UTLA, which is the "certified employee organization" for their bargaining unit under the EERA.

36. Plaintiffs' sincere religious beliefs require them to disassociate from all individuals and organizations that promote actions and activities contrary to their sincerely held beliefs and convictions, including UTLA.

37. Because of their beliefs, Plaintiffs object to the association forced upon them through inclusion in the bargaining unit for which UTLA is the exclusive representative.

**B. UTLA's Longstanding Anti-Semitic Speech and Public Positions**

38. UTLA's speech and activities in opposition to Israel predate October 7, 2023, and has only worsened since that date.

39. UTLA has publicly supported, and many UTLA members are also members of, Union del Barrio, an organization which has publicly called for the elimination of the State of Israel.

40. At a professional development meeting on April 13, 2021, UTLA President Cecily Myart-Cruz stated that the Museum of Tolerance, a Holocaust museum, is an "enemy."

41. At an April 13, 2021, professional development event hosted by UTLA, one of the speakers screamed "F**k Israel."

42. UTLA excludes from its official Facebook Group called "UTLA FB Group - Members Only" Jewish and Zionist teachers who are UTLA members.

CLASS ACTION COMPLAINT      8

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

43.    The page includes anti-Israel posts. If any UTLA member complains about these posts, UTLA admins remove the UTLA member from the Facebook group.

44.    UTLA's official Instagram account "follows" and "likes" a large number of anti-Semitic and anti-Zionist accounts.

45.    At a UTLA House of Representatives meeting in May 2021, UTLA passed a motion to endorse "the international campaign for boycotts, divestment, and sanctions against apartheid in Israel."

46.    In fact, several local UTLA house of representatives passed similar motions calling to boycott, divest and sanction Israel and calling Israel an "apartheid" regime.

47.    UTLA proposed a vote on a similar motion in September 2021, withdrawing the motion only after intense pressure from Jewish organizations such as the Anti-Defamation League.

48.    UTLA's Human Rights Committee provides funding for members to attend anti-Israel demonstrations.

**C. After October 7, 2023, UTLA's Anti-Semitic Speech Intensified**

49.    Since October 7, 2023, UTLA has publicly expressed anti-Semitic and anti-Zionist views, engaged in anti-Zionist political advocacy and actively harassed, ostracized and discriminated against Jewish and Zionist teachers who are forced to associate with UTLA because of exclusive representation.

CLASS ACTION COMPLAINT                    9

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

50.     UTLA refused to allow pro-Israel and Zionist members to participate in Zoom meetings. Meanwhile, participants in the Zoom meetings, whether UTLA members or visitors, were permitted to participate with background screens that were overtly anti-Israel.

51.     In November 2023, the UTLA Political Action Council of Educators (PACE), with the encouragement of UTLA's president Cecily Myart-Cruz, endorsed Khallid Al-Alim as candidate for LAUSD Board Area 1.

52.     Mr. Al-Alim has an extensive number of public anti-Semitic posts on both Twitter/X and Instagram, including blood-libel, conspiracy theories, and anti-Zionist rhetoric.

53.     When a Jewish UTLA member publicized the nature of Mr. Al-Alim's posts, UTLA pressured him to stop disclosing Mr. Al-Alim's positions, and subsequently UTLA Executive Board removed all evidence of the endorsement from its website a few hours before the election.

54.     However, this did not stop UTLA from donating $728,887.44 to Mr. Al-Alim's campaign. A true and correct record of this transaction is attached hereto as **Exhibit C**.

55.     When Jewish members questioned anti-Israel resolutions and motions upon which UTLA was voting, UTLA harassed and removed Jewish and Zionist members from its house of representative meetings in March and April 2024.

56.     In June 2024, the UTLA house of representatives voted to support the anti-Israel student encampments at UCLA.

CLASS ACTION COMPLAINT                           10

57.    UTLA members have held chapter-level discussions which encourage support for the anti-Semitic and anti-Israel "boycott, divest and sanction" movement among rank-and-file members of UTLA, who are Plaintiffs' colleagues, as well as UTLA officials.

58.    By failing to express any support for the victims of October 7, 2023, and by denouncing Israel through many official acts, UTLA has ensured that the isolation, marginalization, harassment, and ridicule experienced by the pro-Israel Zionist faculty would continue throughout the academic year.

**D. Compelled Association with UTLA Negatively Impacts Plaintiffs' Wages and Working Conditions, Including UTLA's Sponsorship of Anti-Semitic Curricula**

59.    UTLA has supported the use of professional development classes called "Teach Palestine" that focused on redefining Judaism for its own purposes.

60.    The materials removed the mention of the State of Israel's relevance to the Jewish faith. The one-sided event further exacerbated feelings of marginalization among teachers with Jewish backgrounds.

61.    Professional development enables teachers to advance their careers and earn higher salaries and must be approved and developed in coordination with UTLA. Ex. A, Art. IX-B.

62.    By offering anti-Zionist professional development and training opportunities, UTLA not only demonstrates its bias against Jewish teachers, but makes that bias part of its activities as the exclusive representative of Plaintiffs' bargaining unit.

CLASS ACTION COMPLAINT                    11

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

63.    The teachers that presented at the professional development violate, disparage and offend Plaintiffs' sincerely held beliefs.

64.    In August 2024, UTLA hosted a leadership conference that included topics such as how to insert discussions about being anti-Israel in the classroom without getting fired.  A true and correct copy of the slideshow for the presentation is attached hereto as **Exhibit D**.[1]

65.    At this same meeting, UTLA staff spread anti-Semitic talking points by falsely implying that a Jewish cabal accused an anti-Israel teacher of possessing child pornography "because of this issue," so that the teacher  would stop teaching anti-Israel information to his students.

66.    While California law will require that all students graduating from high school have taken at least one class in ethnic studies by 2030, Los Angeles imposed the requirement effective August 25, 2020. Los Angeles also "integrate[s] Ethnic Studies into the PreK-8 curricula."[2]

67.    Among its demands during the 2022 collective bargaining negotiation with LAUSD, UTLA sought and obtained LAUSD's commitment to the creation of a UTLA/LAUSD Ethnic Studies Committee, in which UTLA appoints half of the ten members. Ex. A, art. 25, Section 4.0.

68.    Under the CBA, and pursuant to that demand, the UTLA/LAUSD Ethnic Studies Committee provides input on the selection of models and providers of

---

[1] https://x.com/ICANAction/status/1836608354023805240 (last visited October 6, 2024).

[2] https://tinyurl.com/rme8tcs7 (last viewed October 6, 2024).

CLASS ACTION COMPLAINT                12



P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

professional development, and the development or selection of curriculum and teaching materials to be purchased for Ethnic Studies.

69. UTLA has appointed to the joint committee at least five individuals who have repeatedly, and unabashedly, expressed anti-Semitic and anti-Israel views, including Theresa Montaño, and Guadalupe Cardona, Dr. Melina Abdullah, Roxana Duenas, and UTLA President Cecily Myart-Cruz.

70. Dr. Abdullah's view of Jews has been known for years, and is vividly illustrated by her social media, such as a Tweet she posted on December 3, 2018:

> By firing @marclamonthill, @CNN has chosen to stand with a Zionist Israel that Murders and terrorizes the Palestinian people. They has [sic] shown the [sic] only believe in free speech for some. And they have demonstrated their racism towards Black Men who [sic] they cannot completely control.[3]

71. In another Tweet, Dr. Abdullah proudly and publicly shared her hatred of Jews, blaming them for everything bad, including—ironically—intolerance: "We must dismantle patriarchy! specifically Jewish patriarchy offending Muslims & controlling our economy & campuses!" and "...more & more jews invading campuses, causing islamophobia, racism, & intolerance!"

---

[3] https://canarymission.org/professor/Melina_Abdullah (last visited October 6, 2024).

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

72.    UTLA is an active proponent of the Liberated Ethnic Studies Model Curriculum ("LESMC") and instrumental in its insertion and attempted insertion into the classrooms of the LAUSD.

73.    Upon information and belief, the Ethnic Studies material taught in LAUSD, is heavily influenced by LESMC, and denounces the State of Israel.

74.    UTLA uses its member resources to promote adoption of the LESMC, and uses its rights under the CBA to contribute content to the materials taught.

75.    The Liberated Ethnic Studies Model Curriculum Consortium (the Consortium) produces LESMC teaching materials.

76.    The Consortium denounces the idea of a Jewish homeland.

77.    Until recently, the Consortium stated on its website that "Zionism is a nationalist, colonial ideology that, from the late 19th century on, has called for the creation and expansion of Israel as a Jewish state in historic Palestine by any means necessary." A true and correct copy of "Preparing to Teach Palestine: A Toolkit" is attached hereto as **Exhibit E**.

78.    Theresa Montaño is a member of the joint UTLA/LAUSD Ethnic Studies Committee and on the Leadership Team of the Consortium. Since she works for the Consortium, and Ms. Montaño pushed for LESMC to be adopted as the official curriculum for teaching ethnic studies in LAUSD.

79.    Guadalupe Cardona is a member of the UTLA/LAUSD Ethnic Studies Committee and on the Leadership Team of the Consortium. As such, she has also

CLASS ACTION COMPLAINT                    14

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

pushed for LESMC to be the curriculum for teaching ethnic studies in LAUSD. She uses LESMC in her own LAUSD classroom.

80.     Upon information and belief, during the UTLA/LAUSD Ethnic Studies Committee meetings, Montaño, Cardona and other members chosen by UTLA to sit on the committee, caused LESMC materials to be included in the Ethnic Studies curriculum that the committee recommended to LAUSD.

81.     Upon information and belief, the Ethnic Studies materials taught in LAUSD is heavily influenced by LESMC created by the Consortium. It denounces the existence of the State of Israel as a morally reprehensible an idea.

82.     On April 13, 2021, UTLA hosted a panel training to provide teachers with tools to teach Ethnic Studies. At this panel, UTLA brought in Celine Qussiny, as the expert to speak on "Palestine Studies." During the panel, Qussiny explained that "we have to always be confronting Zionism," which she defined as "a political, settler-colonial ideology that justifies ethnic cleansing of the Palestinians from their ancestral homeland." She described Israel as a "fascist dictatorship."

83.     By choosing Qussiny as an instructor at its event for teachers on how to teach Ethnic Studies, UTLA intentionally advanced the view she expressed – that UTLA teachers must "always be confronting Zionism" – as a principle to be included in the LAUSD Ethnic Studies curriculum.

84.     Plaintiffs strongly oppose the Ethnic Studies curriculum UTLA and its representatives have chosen to promote.

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

85.     The curriculum is so overtly anti-Semitic that it creates a threatening, discriminatory and ostracizing environment for the Plaintiffs.

86.     Further, the knowledge that the organization that is tasked with their wages, hours and working conditions hand-picked this curriculum leads Plaintiffs to conclude UTLA cannot be fair or objective in representing the Plaintiffs' interests.

**F. Plaintiffs' Forced Association with UTLA Causes Them Personal and Social Stress, and Ostracization in Their Religious Community**

87.     UTLA's actions create a work environment within the schools of LAUSD that makes Jewish, Israeli and other teachers with sincere religious convictions in support of Israel, including Plaintiffs, fearful of expressing any dissent or disagreement.

88.     This gives other teachers permission to marginalize Plaintiffs professionally.

89.     For example, a fellow teacher told Ms. Krieger that Israel is a genocidal country, a statement that deeply offended Ms. Krieger.

90.     The hostile environment UTLA has fostered also affects students. Ms. Krieger has observed students bullied by other students for their support of Israel, or simply for being Jewish.

91.     Due to the overt hostility fostered by UTLA, Plaintiff Golbin has become uncomfortable teaching the ancient history of Israel and Judea. She has experienced students expressing their opinions such as, "Israel is in occupation of



P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

Palestine." She has had students ask her outright whether she supports Israel or Palestine. She has had students refuse to identify Israel on a map.

92.    She lives in dread of parent complaints if she gives any opinion on the subject of Israel or Palestine.

93.    Based on UTLA's positions, Ms. Golbin does not believe UTLA could represent her fairly should any such complaint lead to discipline.

94.    Ms. Golbin has taken the step of meeting with other teachers to discuss how to answer students' questions.

95.    On March 13, 2024, Ms. Golbin participated in a UTLA house of representatives meeting on Zoom. Two individuals, Amy Leserman and Dylan Hosier, encouraged parents to sign an email petition for a "no" vote on a ceasefire resolution. UTLA president Cecily Myart Cruz said that to sign such a petition would be an act of "white supremacy." Other members of the UTLA house of representatives declared that Ms. Leserman has "white privilege." These members also stated that Jewish parents who support Israel are "white supremacists."

96.    UTLA president Cecily Myart Cruz has spoken disparagingly of Sephardic Jews and Persian Jews.

97.    Her statements caused Ms. Golbin to realize that UTLA would not be trustworthy as a representative for anyone with her ethnic background and religious beliefs.

98.    As a result of the anti-Semitic and anti-Zionist curriculum UTLA has caused to be taught at LAUSD schools, Plaintiff Jane Doe has seen students at her

CLASS ACTION COMPLAINT                    17

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

school bullied by other students for their support of Israel, or simply for being Jewish.

99.    Jane Doe has participated in teacher trainings during which she was ostracized and targeted for her sincere beliefs. UTLA used incendiary language, calling Israel an "apartheid" state committing "genocide."

100.    Jane Doe has experienced anti-Semitic and anti-Zionist attacks from members of UTLA, including bullying and harassment.

101.    During several meetings, UTLA administrators and officials referred to Jewish parents as "those European, white oppressors in the Valley," referencing a place where many Jewish people live, and "those Middle Easterners in the rich areas of Los Angeles," referring to Sephardic and Iranian Jews that live in and around Beverly Hills.

102.    Jane Doe is afraid of being openly expressing her love for Israel at school.

103.    Jane Doe has felt marginalized and ostracized by UTLA whenever she has tried to participate in any union activities.

104.    Zionism is an integral component of Jane Doe's Jewish identity, the impact of UTLA's conduct has been to marginalize and ostracize her on the basis of her identity as a Jew. The union has made it clear that Jews who support the Jewish homeland, the State of Israel, are not welcome.

CLASS ACTION COMPLAINT                    18



P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

105.    Jane Doe resigned from UTLA because she believes that UTLA does not represent Jewish and pro-Israel members of the bargaining unit and instead works to eliminate them from LAUSD.

106.    As a result of the anti-Israel curriculum taught in LAUSD and UTLA's anti-Semitic and anti-Zionist actions, Jane Doe has modified her behavior at school by not discussing her love for Israel or even mentioning that she has family that lives there.

107.    Plaintiffs also strongly oppose the political positions and speech of UTLA, and do not want to be associated with, represented by, or linked to UTLA in any way.

108.    However, since it is well-known that UTLA represents the entire bargaining unit of teachers at LAUSD, many assume that all teachers at LAUSD must share UTLA's positions.

109.    Plaintiffs find that they are, therefore, publicly affiliated with UTLA's objectionable positions.

110.    To publicly denounce UTLA's position cannot entirely rectify this misapprehension, but attempts to do so lead to additional backlash from members of the LAUSD community who support UTLA's position.

111.    UTLA's speech, conduct and advancement of anti-Zionist curriculum, sets Plaintiffs and their co-religionists apart and singles them out for disparate treatment, opprobrium, and hostility, based solely upon their religious, ethnic, and

CLASS ACTION COMPLAINT                    19

FREEDOM
FOUNDATION

moral beliefs and identity, including their support for Israel, the nation-state of the Jewish people.

112. Each of the Plaintiffs determined to leave their membership in UTLA because of their opposition to UTLA's political and ideological positions.

113. Plaintiffs Krieger, Kingston and Jane Doe resigned their union memberships and revoked the authorization for the continued deduction of union dues from their wages as a form of protest of UTLA's anti-Semitic and anti-Israel statements, actions, and positions. They obtained counsel who sent their resignations to UTLA's president and outside counsel.

114. While UTLA confirmed that they ended their memberships in UTLA, LAUSD continued to make dues deductions from the wages of Plaintiffs Krieger, Kingston and Jane Doe. UTLA stated that the deductions will continue until the anniversary of the date they agreed to become UTLA members.

115. Pursuant to California Education Code § 45060, LAUSD oversees the deduction of union dues from Plaintiffs for UTLA and transmits them to UTLA.

116. Since the resignations of Plaintiffs Krieger, Kingston and Jane Doe, LAUSD continues to transmit union dues deducted from their wages to UTLA.

117. Compelling Plaintiffs to associate with UTLA through the bargaining unit causes Plaintiffs to be associated with UTLA in the public eye.

118. This association with UTLA has caused, and continues to cause, Plaintiffs to be publicly associated with positions, speech, and actions that betray their religious beliefs and practices.

CLASS ACTION COMPLAINT 20

119. This association with UTLA has caused, and continues to cause, Plaintiffs personal stress and anxiety at work.

120. This association with UTLA has caused, and continues to cause, Plaintiffs personal stress and anxiety in their religious community because of the association their co-religionists see between employees at LAUSD and UTLA's anti-Israel speech and actions.

121. The association with UTLA has caused, and continues to cause, reputational damage to Plaintiffs because their acquaintances, co-religionists, friends and relatives know that they are associated with UTLA by virtue of the fact that UTLA represents all teachers in LAUSD.

## CLASS ALLEGATIONS

122. The named Plaintiffs (Class Representatives) bring this case as a class action pursuant to Federal Rules of Civil Procedure 23 and Rule 23 of the Local Rules of Civil Procedure, for themselves and for all others similarly situated, and any subclasses deemed appropriate by this Court.

123. The Class that the Class Representatives seek to represent is defined as follows: all individuals: 1) who are LAUSD employees exclusively represented by UTLA; 2) who are not currently members of UTLA, but who are within a bargaining unit represented by UTLA; and 3) who hold sincere religious, moral and political opposition to UTLA's advocacy regarding the State of Israel.

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

124.   This class includes everyone who comes within the class definition at any time from two (2) years prior to the commencement of this action until the conclusion of this action.

125.   Upon information and belief, there are likely hundreds of Class members in varying locations across LAUSD. The proposed Class is so large and geographically diverse that joinder is impractical, but common questions of law and fact are presented, the claims and defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class, so as to satisfy Fed. R. Civ. P. 23(a) and L.R. 23-2.2.

126.   There are questions of law and fact common to all Class members, and these common questions of law or fact predominate over any questions affecting only individual members of the Class. Common questions, within the meaning of L.R. 23-2.2(d) include, but are not limited to: whether Defendants violated or violate the Class members' First Amendment rights by forcing them to remain associated with UTLA for purposes of collective bargaining.

127.   The Class Representatives' claims are typical of the claims of the class they seek to represent in that the Class Representatives, and all members of the proposed Class, suffer compelled association with UTLA as their exclusive representative. The Defendants have an identical duty to Class Representatives and all other Class members regarding these claims.

CLASS ACTION COMPLAINT                22

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

128.    Further, the Class Representatives can and will fairly and adequately represent the interests of the Class, and are therefore adequate Class Representatives for purposes of L.R. 23- 2.2(c).

129.    The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

130.    Defendants have acted to deprive Class Representatives and all Class members of their constitutional rights on grounds generally applicable to all, thereby making appropriate declaratory, injunctive, and other equitable relief with regard to the Class as such.

131.    A class action may be maintained under Rule 23(b) and L.R. 23-2.2 because separate actions by Class members could risk inconsistent adjudications on the underlying legal issues.

132.    Further, a class action may be maintained under Rule 23(b) and L.R. 23-2.2 because an adjudication determining the constitutionality the EERA and the CBA's requirement of association with UTLA as the exclusive representative even for objecting LAUSD employees, as a practical matter, will be dispositive of the interests of all Class members.

133.    Further, a class action may be maintained under Rule 23(b) and L.R. 23-2.2 because questions of law or fact common to the members of the class predominate over any questions affecting only individual members in that the important and controlling questions of law and fact are common to all members of

CLASS ACTION COMPLAINT                23

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

the Class, i.e., whether the compelled association violates the First Amendment rights of Class members.

134.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy in as much as the individual Class members are deprived of the same rights by Defendants' actions. The limited amount of money involved in each individual claim would make it burdensome for the Class members to maintain separate actions.

135.   The unconstitutional actions taken by Defendants were taken pursuant to the same statutes and collective bargaining agreement, and constitute a concerted scheme resulting in the violation of the rights of Plaintiffs and Class members. Additionally, the fact that LAUSD must comply with PERB regulations and PERB must enforce the CBA makes it expedient for the named Plaintiffs and members of the Class to proceed against all named Defendants.

136.   If granted Class Certification, Plaintiffs would provide written notice to all potential members of the Class by U.S. Mail and any other means or method directed by the Court.

## CLAIMS FOR RELIEF

### COUNT ONE
### Freedom of Association
### Against All Defendants
### (First Amendment and 42 U.S.C. § 1983)

137.   Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs.

CLASS ACTION COMPLAINT                    24

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

138.   The First Amendment protects the right to associate, or not associate, with individuals or groups.

139.   Because freedom of conscience is central to one's rights as a citizen and member of civil society, association is often based upon one's principles of faith and morality.

140.   Individuals join together and associate with individuals and groups that agree with and support their religious, moral and political views, and eschew association with individuals and groups that do not.

141.   These freedoms are some of the most basic, and precious, possessed by Americans, and form an important part of our shared history.

142.   For five thousand or more years, a belief in the covenant between God and the Jewish people, and the existence and divine support of a Jewish "promised land" in the ancient and current location of the State of Israel, have been central to Jewish belief systems.

143.   UTLA as an entity, its leadership, many members, and the materials it advocates for use in LAUSD classrooms are publicly and proudly anti-Israel and anti-Semitic.

144.   These views are well known by the public, thus by their association with UTLA, the Plaintiffs are publicly associated with UTLA's anti-Semitic views.

145.   California Government Code §§ 3540, *et. seq.*, the California Educational Employment Relations Act (EERA), and the actions of the Defendants pursuant to the EERA, violate the Plaintiffs free association by forcing them to

CLASS ACTION COMPLAINT                    25

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

associate with individuals and with speech that betrays their consciences and deeply held religious and moral beliefs. This occurs in at least three ways.

146.  **First**, the Defendants, through enforcement of the EERA and the CBA, force the Plaintiffs to associate with an anti-Semitic entity: UTLA, their exclusive representative.

147.  As an organization, UTLA has long adopted and publicly promulgated anti-Semitic viewpoints.

148.  UTLA supports the "BDS" movement (boycott, divest, and sanction), and advocates for Israel's elimination.

149.  UTLA's teacher development events removed the mention of the State of Israel's relevance to the Jewish faith.

150.  UTLA hosted a leadership conference that included topics such as how to insert discussions about being anti-Israel in the classroom without getting fired.

151.  UTLA excludes from its Facebook Group called "UTLA FB Group - Members Only" Jewish and Zionist teachers who are UTLA members.

152.  UTLA President Cecily Myart-Cruz has stated that the Museum of Tolerance, a Holocaust museum, is an "enemy."

153.  Khallid Al-Alim, ULTA's endorsed candidate for LAUSD Board Area 1, has an extensive number of public anti-Semitic posts on both Twitter/X and Instagram, including blood-libel, conspiracy theories, and anti-Zionist rhetoric.

154.  UTLA has appointed avowed anti-Semites to the UTLA/LAUSD Ethnic Studies Committee. These individuals are members of UTLA.

CLASS ACTION COMPLAINT                    26

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

155.   UTLA hosted a panel with Celine Qussiny, who stated that "we have to always be confronting Zionism," which she defined as "a political, settler-colonial ideology that justifies ethnic cleansing of the Palestinians from their ancestral homeland." She further described Israel as a "fascist dictatorship."

156.   The Plaintiffs' forced association with UTLA results in their having to betray the tenets of their Jewish faith and rights of free conscience.

157.   But for the EERA, enforced by Defendants, and the CBA created pursuant to that statute and enforced by Defendants, Plaintiffs would have no association with UTLA and its anti-Semitic views.

158.   **Second**, the Defendants, through enforcement of the EERA and the CBA, force the Plaintiffs to associate with anti-Semitic individuals: UTLA's representatives, members, and associates such as other members of the bargaining unit.

159.   UTLA's leadership and many individual members have long adopted and publicly promulgated anti-Semitic viewpoints.

160.   Further, other members of the bargaining unit are openly hostile to Plaintiffs and their beliefs.

161.   Plaintiffs have been ostracized and excluded by fellow members of their bargaining unit.

162.   Plaintiffs have been seen colleagues and students demeaned for being Jewish.

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

163.    Plaintiffs live in fear of expressing any pro-Israel views or even of wearing expressing their Judaism through wearing clothing or jewelry.

164.    The environment that UTLA has created among the members of the bargaining unit is hostile for Plaintiffs and those similarly situated.

165.    The Plaintiffs' forced association with UTLA's representatives, members, and associated persons publicly associates Plaintiffs with views that are the antithesis of their sincerely held religious and moral beliefs. This subjects Plaintiffs to suspicion and opprobrium and in their communities.

166.    But for the EERA, enforced by Defendants, and the CBA created pursuant to that statute and enforced by Defendants, Plaintiffs would have nothing to do with UTLA and its anti-Semitic views, and no compelled association with UTLA members and associated individuals who are openly hostile to Plaintiffs' Jewish faith.

167.    **Third**, the Defendants, through enforcement of the EERA and the CBA, force the Plaintiffs to associate with anti-Semitic writings and instructional material: UTLA's anti-Israel curricula, with no means of separating themselves from its ideology.

168.    UTLA has also supported professional development that teaches anti-Israel and anti-Semitic content.

169.    The UTLA-supported Liberated Ethnic Studies Model Curriculum (LESMC) is patently anti-Semitic, and has been adopted by LAUSD in various ways and at various schools at the behest of UTLA.

CLASS ACTION COMPLAINT                    28

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

170.  LESMC materials denounce the idea of a Jewish homeland.

171.  The Plaintiffs' forced association with ULTA results in a forced association with LESMC.

172.  The Plaintiffs' forced association with LESMC results in their having to silently watch the open betrayal their Jewish faith and deeply held beliefs.

173.  But for the EERA, enforced by Defendants, and the CBA created pursuant to that statute and enforced by Defendants, Plaintiffs would have no association whatsoever with LESMC and its anti-Semitic views.

174.  Because of these numerous violations of their right to freedom of association, the Plaintiffs seek equitable relief against all Defendants, in their official capacities, to end the continuing irreparable injuries to their First Amendment right to free association, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-2202, and attorneys' fees and costs as provided by 42 U.S.C. § 1988.

### COUNT TWO
**Violation of Doctrine of Unconstitutional Conditions**
**Against All Defendants**
**(First Amendment and 42 U.S.C. § 1983)**

175.  Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs.

176.  The unconstitutional conditions doctrine holds that the state may not require the waiver of a federal right as a condition of receiving a public benefit.

CLASS ACTION COMPLAINT                    29

FREEDOM
FOUNDATION

177.   Being forced to choose between preserving a constitutional right, and receiving an otherwise available public benefit, contains inherent government coercion.

178.   This coercive pressure, which negates the very possibility of consent, is the basis of unconstitutional conditions injuries.

179.   The purpose of the unconstitutional conditions doctrine is to prevent the government from subtly pressuring citizens, whether purposely or inadvertently, into surrendering their rights.

180.   When an individual refuses to cede a constitutional right in the face of coercive pressure, such as the denial of an otherwise available governmental benefit, the individual has suffered a constitutionally cognizable injury.

181.   This coercive pressure is forbidden even when the grant of a government benefit or privilege is wholly discretionary, as is the case with public employment.

182.   Even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, it cannot condition receipt of a benefit on a waiver of a fundamental right, like the right to free association.

183.   In short, government may not grant a benefit on the condition that the beneficiary surrender a constitutional right, even if the government may withhold that benefit altogether.

CLASS ACTION COMPLAINT                    30

184.   The condition that Plaintiffs give up their free association rights through being compelled to associate with a private political organization, UTLA, is an unconstitutional condition on their receipt of public employment.

185.   When hired, and while maintaining their public employment, Plaintiffs are forced to choose between exercising their First Amendment right to free association, or keeping their jobs.

186.   This "choice," is no choice at all.

187.   But for the EERA and the CBA created pursuant to that statute, and enforced by the Defendants, the Plaintiffs would have nothing to do with UTLA.

188.   Because of Defendants' imposition of this unconstitutional condition, the Plaintiffs seek equitable relief against all Defendants, in their official capacities, to end the continuing irreparable injuries to their First Amendment right to free association, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-2202, and attorneys' fees and costs as provided by 42 U.S.C. § 1988.

**COUNT THREE**
**Procedural Due Process**
**Against Defendant Carvalho**
**(First and Fourteenth Amendment and 42 U.S.C. § 1983)**

189.   Plaintiffs Krieger, Kingston, and Jane Doe re-allege and incorporate by reference all allegations contained in the foregoing paragraphs.

190.   The First Amendment requires pre-deprivation procedural safeguards to minimize the risk that an employee's money will be taken, even temporarily, to

CLASS ACTION COMPLAINT                    31

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

fund a union's political speech without affirmative consent, causing the employee irreparable harm.

191.   Additionally, the Fourteenth Amendment's Due Process Clause requires the provision of constitutionally adequate procedures before an individual is deprived of liberty interests, like free speech interests.

192.   The Due Process Clause also requires the provision of constitutionally adequate procedures before an individual is deprived of property interests, like lawfully earned wages.

193.   This includes notice, an opportunity to contest, and access to a neutral third party decisionmaker.

194.   Plaintiffs Krieger, Kingston, and Jane Doe have a liberty interest in their First Amendment right to be free from compelled speech.

195.   Plaintiffs Krieger, Kingston, and Jane Doe also have a property interest in their lawfully earned wages.

196.   Supreme Court precedent has long placed Defendant Carvalho on notice that union deductions from public employees' lawfully earned wages present inherent risks to those employees' First Amendment rights.

197.   Thus, Defendant Carvalho's failure to provide Plaintiffs Krieger, Kingston, and Jane Doe the required procedural protections prior to taking their wages without affirmative consent occurred through deliberate indifference to their rights, and was intentional.

CLASS ACTION COMPLAINT                32

198.   Even after Plaintiffs Krieger, Kingston, and Jane Doe resigned their UTLA memberships, withdrawing their affirmative consent to continued UTLA deductions, Defendant Carvalho has continued the deductions.

199.   Defendant Carvalho's continued intentional denial of necessary pre-deprivation procedural protections violated and continues to violate Plaintiffs Krieger, Kingston, and Jane Doe's First and Fourteenth Amendment rights to procedural due process.

200.   Therefore, Plaintiffs Krieger, Kingston, and Jane Doe seek equitable relief against Defendant Carvalho, in his official capacity, to end the continuing irreparable injuries to their First Amendment and Fourteenth Amendment due process rights, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-2202, and attorneys' fees and costs as provided by 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request this Court order the following relief:

A.   **Declaratory Judgment:**

• the compelled association between the Plaintiffs and UTLA, its representatives, members, and associates, and the LESMC, enforced by the PERB Defendants and Defendant Carvalho, pursuant to the EERA and the CBA, violates the Plaintiffs' First Amendment rights to freedom of association;

• the compelled association between the Plaintiffs and UTLA, enforced by the PERB Defendants and Defendant Carvalho, pursuant to the EERA and the

CLASS ACTION COMPLAINT                    33

CBA, violates the Plaintiffs' First Amendment right to freedom of association under the doctrine of unconstitutional conditions;

- the denial of constitutionally adequate pre-deprivation procedural safeguards, required by the First and Fourteenth Amendments, pursuant to Defendant Carvalho's authority as superintendent of LAUSD, violates the Plaintiff's First and Fourteenth Amendment rights.

B. **Injunctive Relief:**

- a permanent injunction enjoining Defendants, their officers, employees, agents, attorneys, and all others acting in concert with them, from engaging in any of the activities listed in Part A above that the Court declares unconstitutional.

C. **Nominal Damages:** A judgment against all Defendants for an amount of not less than $1.00 each in nominal damages for the violation of the Plaintiffs' constitutional rights.

D. **Attorneys' Fees and Costs**: A judgment awarding the Plaintiffs their costs and reasonable attorneys' fees under 42 U.S.C. § 1988.

E. **Other:** Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Date: October 7, 2024

Shella Alcabes, Cal. Bar No. 267551
salcabes@freedomfoundation.com
Rebekah Schultheiss, Cal. Bar No. 256714
rschultheiss@freedomfoundation.com

CLASS ACTION COMPLAINT                    34



P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1   Timothy R. Snowball, Cal. Bar No.317379
    tsnowball@freedomfoundation.com
2   Freedom Foundation
    P.O. Box 552, Olympia, Washington 98507
3   Tel: (360) 956-3482

4   *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT                    35